UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| LAMAR ROBINSON and MARTELL ROGERS,<br><br>Plaintiffs,<br><br>v.<br><br>GRACE E. KNUTSON,<br><br>Defendant. | Case No. 23-CV-517-JPS<br><br>**ORDER** |

On April 24, 2023, Plaintiffs Lamar Robinson ("Robinson") and Martell Rogers ("Rogers") (collectively, "Plaintiffs") sued Defendant Grace E. Knutson ("Knutson"), in her official capacity as Director of Sex Offender Programs for the Wisconsin Department of Corrections. ECF No. 1.[1] Plaintiffs allege that Wisconsin's sex offender labeling practices under Wis. Stat. § 301.45(1d)(b) violate their substantive and procedural due process rights under the Fourteenth Amendment. *Id.* at 1–2 & n.1.[2] Before the Court

---

[1] This case is nearly identical to one that counsel for Plaintiffs brought in 2020. *See Halcsik v. Knutson*, 2:20-cv-317-PP, 2022 U.S. Dist. LEXIS 52927 (E.D. Wis. Mar. 24, 2022). The court dismissed that case at the motion to dismiss stage. *See generally id.* Plaintiffs' counsel explains that "th[at] decision could not be appealed because . . . [the plaintiff] lost contact with counsel and absconded from his supervision, thereby mooting his claims and forcing the filing of this new case with new plaintiffs but presenting the same exact legal issues." ECF No. 11 at 4.

[2] Plaintiff's challenge to Wis. Stat. § 301.45(1d)(b) appears to be as-applied rather than facial. *See* ECF No. 11 at 12–13 ("[P]utting aside the question of whether the law is irrational as applied to everyone who has been convicted of false imprisonment of a minor, the law is irrational as applied to Plaintiffs."); *id.* at 20 (asserting "the conclusion that the Statute violates substantive due process as applied to Plaintiffs"). *See United States v. Tollefson*, 367 F. Supp. 3d 865, 871–72 (E.D. Wis. 2019) ("To succeed on a facial challenge, the challenger must typically establish that no set of circumstances exists under which the law would be valid,

is Defendant's motion to dismiss the complaint for failure to state a claim. ECF No. 8. For the reasons set forth herein, the Court will grant the motion.

## 1. RELEVANT FACTS

### 1.1 Wis. Stat. § 301.45(1d)(b)

Wis. Stat. § 301.45 is entitled "Sex offender registration." Section 301.45(1d)(b) defines "[s]ex offense" as "a violation, or the solicitation, conspiracy, or attempt to commit a violation, of" various Wisconsin criminal statutes, including Wis. Stat. §§ 940.30 (false imprisonment) and 948.30 (kidnapping) "if the victim was a minor and the person who committed the violation was not the victim's parent." Sex offenders are subject to extensive reporting and registration requirements and face prosecution and fines for failure to comply with these requirements. Wis. Stat. §§ 301.45(2)–(6).

### 1.2 Plaintiffs

#### 1.2.1 Robinson

In 2013, Robinson was found guilty of armed robbery, burglary, and false imprisonment involving a minor under Wis. Stat. § 940.30. ECF No. 1 at 3. Robinson served fourteen years in prison, was released on June 1, 2022, and is currently serving his term of extended supervision. *Id.*

Robinson's conviction arose from his commission of a burglary of a residence occupied by a mother and her children. *Id.* at 4. During the burglary, one of Robinson's co-burglars pointed a gun at the children. *Id.* None of the burglars touched the children, and the burglars fled

---

or that the statute lacks any plainly legitimate sweep. . . . An as-applied challenge, on the other hand, 'is one that charges an act is unconstitutional as applied to [the challenger's] specific activities even though it may be capable of valid application to others.'") (citing *United States v. Stevens*, 559 U.S. 460, 472 (2010) and quoting *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011)).

immediately after stealing items from the home. *Id*. There is no evidence that the act of pointing the gun at the children by Robinson's co-burglar was sexually motivated or involved any sexual component. *Id*.

As a result of the offense, Wisconsin law designates Robinson as a sex offender, and he is required to register as such for the remainder of his life. *Id.* This is so notwithstanding that he has never been charged with sexual misconduct of any kind. *Id*. Although he does not currently reside in Wisconsin, Robinson will be subject to various statutory and administrative restrictions applicable to sex offenders if he ever returns to Wisconsin. *Id.*[3] Because of his sex offender status, Robinson has experienced stigma, unfavorable treatment, lost job opportunities, and personal humiliation. *Id*. at 5.

### 1.2.2 Rogers

In 2009, Rogers was found guilty of false imprisonment under Wis. Stat. § 940.30, forceful abduction of a child under Wis. Stat. § 948.30(2)(a), burglary, and armed robbery, pursuant to which conviction Rogers remains incarcerated. *Id*. at 5, 7. His conviction arose out of a burglary he and a co-defendant committed in 2006. *Id*. at 5. During the burglary, Rogers and his co-defendant placed the two minor occupants of the residence into the attic and blocked the door. *Id.* Rogers and his co-defendant then stole items from the residence and left. *Id.* at 6.

No sexual act or sexual motive was alleged in connection with the crime, and Rogers has never been charged with sexual misconduct of any

---

[3]Those restrictions include the requirement to register as a sex offender in Wisconsin annually or otherwise face felony charges; pay an annual fee to register as a sex offender; wear a GPS monitor for life and pay for such monitoring; and, if he returns to Wisconsin while on supervised release, refrain from having contact with minors. *Id*. at 5 (citing Wis. Stat. §§ 301.45(6) and (10) and 301.48(2)).

kind. *Id.* at 6, 7. Nevertheless, like Robinson, Rogers's conviction subjected him to Wisconsin's sex offender registry requirements and its attendant restrictions, *see supra* note 3. *Id.* at 6. In addition, Rogers has faced stigma, ostracization, and has been forced to isolate himself in prison to avoid being subjected to violence. *Id.* at 7. He is also required to take sex offender therapy courses prior to his release and is ineligible for work release programs. *Id.*

## 2. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b) provides for dismissal of complaints which, among other things, fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81.

## 3. ANALYSIS

Plaintiffs bring both substantive and procedural due process claims under the Fourteenth Amendment. ECF No. 1 at 7–8. Defendant moves to dismiss both claims. *See generally* ECF No. 8.

### 3.1 Substantive Due Process

The scope of the Fourteenth Amendment's substantive due process component "is very limited." *Lukaszczyk v. Cook County*, 47 F.4th 587, 599 (7th Cir. 2022) (quoting *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019)). In analyzing a substantive due process claim, a court must "consider whether the plaintiffs assert a fundamental right or liberty." *Id.* at 600. If no fundamental right or liberty is asserted, then the court "review[s] the claim for a rational basis." *Id.*; *see also Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003) ("Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational.") (citing *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)).

The parties do not dispute that rational basis is the appropriate standard of review here. ECF No. 1 at 7–8 (asserting that "[l]abeling Plaintiffs as sex offenders and requiring them to register as such" under Wis. Stat. § 301.45(1d)(b) "bears no rational relationship" to its legislative purpose); ECF No. 9 at 10 (asserting that "[r]ational basis review applies" and that "Plaintiffs do not allege that Wis. Stat. § 301.45(1d)(b) violates a fundamental right"); ECF No. 11 at 6 ("[a]ccepting that the rational basis test provides the proper standard of review").

"Rational-basis review is 'highly-deferential.'" *Brown v. City of Michigan City*, 462 F.3d 720, 733 (7th Cir. 2006) (quoting *Turner v. Glickman*, 207 F.3d 419, 426 (7th Cir. 2000)). Nevertheless, it is not "toothless." *Mathews v. Lucas*, 427 U.S. 495, 510 (1976). "[R]ational basis review requires us to presume an ordinance is valid and to uphold it so long as it 'bears a rational relation to some legitimate end.'" *Goodpaster v. City of Indianapolis*, 736 F.3d

1060, 1071 (7th Cir. 2013) (quoting *Romer v. Evans*, 517 U.S. 620, 631 (1996)). "Once we identify a plausible basis for the legislation, our inquiry is at its end." *Id.* (citing *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).

"[U]nder rational basis review, 'the challenging party bears the burden of negating "every conceivable basis which might support"' a regulation." *Platt v. Brown*, 872 F.3d 848, 852 (7th Cir. 2017) (quoting *Foxxxy Ladyz Adult World, Inc. v. Village of Dix*, 779 F.3d 706, 720 (7th Cir. 2015)). Moreover, "it is entirely irrelevant . . . whether the conceived reason for the challenged [regulation] actually motivated the legislature." *Foxxxy Ladyz Adult World, Inc.*, 779 F.3d at 720 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *FCC*, 508 U.S. at 315 (citing *Vance v. Bradley*, 440 U.S. 93, 111 (1979) and *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)). "If it is as least debatable whether a rational relationship exists between a governmental policy and a conceivable legitimate governmental objective, there is no substantive due-process violation." 16B AM. JUR. 2D *Constitutional Law* § 955 (May 2023) (citing *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167 (5th Cir. 1996) and *Dodd v. Hood River County*, 59 F.3d 852 (9th Cir. 1995)).

Defendant argues that Wis. Stat. § 301.45(1d)(b) survives rational basis review because it came about following a push "to comply with the [Jacob Wetterling Act, 42 U.S.C. § 14071]," which created a nationwide sex offender registry. ECF No. 9 at 6–7. The enactment of the Jacob Wetterling Act was supported by, inter alia, the findings that "[t]wo-thirds of the cases of non-family child abduction reported to police involve sexual assault"

and "child molestation is one of the most underreported crimes . . . ." *Id.* at 8 (quoting Jacob Wetterling Act, Committee on the Judiciary, H.R. Rep. No. 103-392, at 3–4 (1993)); *see also People v. Cintron*, 827 N.Y.S.2d 445, 455 (N.Y. App. Div. 2006) ("The legislative history of [the Jacob Wetterling Act] reflects that Congress intentionally included kidnapping and unlawful imprisonment of a minor in the crimes subject to registration requirements and was well aware of the connection between child abduction and the risk of sexual abuse.").[4]

According to Defendant, the Jacob Wetterling Act (which Wis. Stat. § 301.45(1d)(b) followed) "reflects the legislative purpose to protect children by making a broader array of crimes eligible for the registry, including those for which a sexual motive may not be immediately apparent." ECF No. 9 at 8; *see also State v. Smith*, 780 N.W.2d 90, ¶ 26 (Wis. 2010) ("Wisconsin's sex offender registration statute 'reflect[s] an "intent to protect the public and assist law enforcement" and [is] "related to community protection."'") (quoting *State ex rel. Kaminski v. Schwarz*, 630 N.W.2d 164, ¶ 41 (Wis. 2001) and citing *Smith v. Doe*, 538 U.S. 84, 93 (2003)).[5]

---

[4]These Committee on the Judiciary comments appear to have been rooted primarily in a 1990 study. *See* Finkelhor, et al., *Missing, Abducted, Runaway, and Thrownaway Children in America, First Report: Numbers and Characteristics National Incidence Studies* (1990) [https://perma.cc/7V7V-E5QR] ("Two-thirds or more of the Legal Definition Abductions [non-parent abductions] involved sexual assault."); *Nonfamily Abducted Children: National Estimates and Characteristics*, NISMART Bulletin (Oct. 2002) [https://perma.cc/3N6M-6UGK] ("Close to half of all nonfamily abduction victims and stereotypical kidnapping victims were sexually assaulted . . . .").

[5]The Wisconsin statute itself does not explicitly set forth a purpose, and the parties' characterizations of its purpose differ somewhat. Defendant characterizes the legislative purpose of Wis. Stat. § 301.45(1d)(b) broadly as "protect[ing] children by making a broader array of crimes eligible for the registry, including those for which a sexual motive may not be immediately apparent." ECF No. 9 at

Defendant argues that "the legislative history of [the] Jacob Wetterling Act reflects that Congress intentionally included kidnaping [sic] and unlawful imprisonment of a minor as crimes subject to registration requirements" to further the Act's goal of "protecting children from abduction as well as sexually related crimes," due to "the connection between child abduction and the risk of sexual abuse." *Id.* at 12.

In response, Plaintiffs write that "the State offers no actual evidentiary support for this assertion [regarding a correlation between non-family abduction and child sexual assault] and claims it needs none." ECF No. 11 at 14. This argument is a nonstarter. As noted *supra*, "a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data." *FCC*, 508 U.S. at 315 (citing *Vance*, 440 U.S. at 111 and *Clover Leaf Creamery Co.*, 449 U.S. at 464). In other words, Plaintiffs appear to demand from Defendant more than rational basis requires. Contrary to Plaintiffs' suggestion, "[i]t is [Plaintiffs] who must demonstrate that the [challenged legislation] lacks a rational relationship with a legitimate

---

8 (citing legislative history of Jacob Wetterling Act). Plaintiffs characterize it somewhat more narrowly and without citation: "protect[ing] the public from those who have committed sexual offenses." ECF No. 11 at 9; *id.* at 15 ("[T]he purpose of the sex offender registry is to protect the public from those who have committed sexual offenses; not to protect the public as a general matter.").

Wisconsin case law interpreting Wis. Stat. § 301.45(1d)(b) demonstrates that Defendant's slightly broader characterization of its legislative purpose is more accurate. *See Smith,* 780 N.W.2d, ¶ 13 (characterizing legislative purpose as one of "protecting the public and assisting law enforcement"); *State v. Smith*, 762 N.W.2d 856, ¶ 13 (Wis. Ct. App. 2008) ("[The defendant] overlooks the purpose of the statute, which is protecting the public—specifically, children. The goal is not to identify individuals guilty of a crime with a sexual element."); *State v. C.G. (In the Interest of C.G.),* 976 N.W.2d 318, ¶ 28 (Wis. 2022) ("The intent of the law is 'to protect the public and assist law enforcement.'") (quoting *State v. Bollig*, 605 N.W.2d 199, ¶ 21 (Wis. 2000)).

Page 8 of 16
Case 2:23-cv-00517-JPS   Filed 09/20/23   Page 8 of 16   Document 14

government interest; it is not [Defendant's] obligation to prove rationality with evidence." *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014) (citing *Srail v. Village of Lisle*, 588 F.3d 940, 946 (7th Cir. 2009)). And in any event, Plaintiffs' contention that "the State offers no actual evidentiary support," ECF No. 11 at 14, is not accurate; Defendant points to an acknowledged statistical correlation between non-family child abduction and sex crimes against children. ECF No. 9 at 6–8; *see also supra* note 4.[6]

The Court may similarly reject Plaintiffs' contention that "there is a serious factual question as to how many people who commit a false imprisonment engage in sexual conduct when committing such an offense or have a sexual motivation for their offense," because "a legislative choice is not subject to courtroom factfinding . . . ." *FCC*, 508 U.S. at 315 (citing *Vance*, 440 U.S. at 111 and *Clover Leaf Creamery Co.*, 449 U.S. at 464). Plaintiffs insist that "it would be fundamentally irrational" to categorically deem all individuals who commit non-family abduction or false imprisonment "as 'sex offenders' if the vast majority of individuals so categorized have no sexual intent or motivation for their crime." ECF No. 11 at 14–15. But the

---

[6]Indeed, this correlation has been acknowledged in other analogous cases. *See Smith*, 780 N.W.2d, ¶ 13 ("[F]alse imprisonment has been linked to the commission of sexual assault and violent crimes against children . . . ."); *id.*, ¶ 30 ("Legislatures around the country have acknowledged a nexus between child abductions and sexual offenses . . . .") (citing New York and Illinois cases); *People v. Knox*, 875 N.Y.S.2d 828, 833 (N.Y. 2009) ("[T]he Legislature could rationally have relied on the fact that a great many cases of kidnapping or unlawful imprisonment of children are indeed sex offenses. A study published in 1990 concluded that 'about two-thirds or so of the Non-Family Abductions involved sexual assaults' . . . . A more recent study found the frequency to be lower, but still quite high: in 46% of the nonfamily abductions studied, the perpetrator had sexually assaulted the child . . . .") (citations omitted)).

legislative history in support of the Jacob Wetterling Act (which Wis. Stat. § 301.45(1d)(b) followed) refutes this unsupported hypothetical—it provides that, in fact, many of these cases *do* involve sexual misconduct. ECF No. 9 at 6–8 (quoting Jacob Wetterling Act, Committee on the Judiciary, H.R. Rep. No. 103-392, at 3–4 (1993)); *id.* at 12; *see also supra* note 4. On rational basis review, it is not the Court's job to search out data that contradicts that finding, especially where Plaintiffs have not themselves provided contradictory data.

Plaintiffs also point to Illinois, which "has created a 'Murderer and Violent Offender Against Youth' Registry on which it requires individuals convicted of certain crimes, including aggravated kidnapping of a child by a nonparent, to register." ECF No. 11 at 15 n.5. "There is no reason Wisconsin could not do the same," Plaintiffs argue. *Id.* But this argument, too, is a nonstarter, because "[t]he fact that other means are better suited to the achievement of governmental ends . . . is of no moment under rational basis review." *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 77–78 (2001) (citing *Vance*, 440 U.S. at 103 n.20 ("Even were it not irrelevant to [rational basis review] that other alternatives might achieve approximately the same results . . . .") and *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316 (1976)). On rational basis review, that an alternative method may present a better fit between "the means employed and the ends served" is of no consequence. *Id.* at 77.

The Court has reviewed those cases Plaintiff cites, ostensibly as examples where "courts . . . found that the rational basis test was no barrier to finding [that] similar registration requirements violated substantive due process as applied to individuals whose offenses were not sexually motivated." ECF No. 11 at 18–19 (collecting cases). One of the cases to which

Plaintiffs cite is *Commonwealth v. Muniz*, 640 Pa. 699 (Pa. 2017), but *Muniz* does not address any due process challenge. *See generally id.* (addressing both federal and state ex post facto claims). It does not, therefore, support the assertion for which Plaintiffs cite it.[7]

With respect to the other cases Plaintiffs list, the Court has reviewed them but is not compelled to join in their conclusions. Although it is unclear the weight to which this distinction should be entitled, the Court notes that in each of these cases, the respective legislature or municipality explicitly stated that its purpose in enacting the respective sex offender registration legislation was to "protect[] . . . victims and potential victims of *sex offenders*." *ACLU of N.M. v. City of Albuquerque,* 139 N.M. 761, 772 (N.M. Ct. App. 2006); *State v. Reine,* No. 19157, 2003 WL 77174, at *2–3 (Oh. Ct. App. 2003) ("We do not need to guess concerning the Ohio General Assembly's purposes in enacting the sexual offender classification statute . . . . The general assembly hereby determines and declares that it recognizes and finds all of the following: . . . [T]he public [should be] provided adequate notice and information about sexual predators, habitual sex offenders, and certain other offenders and delinquent children who commit *sexually oriented offenses* . . . ." (emphasis added)); *State v. Robinson*, 873 So.2d 1205, 1210 (Fla. 2004) ("The statute contains a statement of its findings and intent . . . [which] clearly express the Act's purpose of protecting the public, and especially children, from predatory sexual activity."); *Yunus v. Lewis-Robinson*, No. 17-cv-5839 (AJN), 2019 U.S. Dist. LEXIS 5654, at *29 (S.D.N.Y. Jan. 11, 2019) ("Reviewing the enabling legislation, [the magistrate judge]

---

[7]Plaintiffs also neglect to note that it has been since abrogated. *See Commonwealth v. Santana*, 266 A.3d 528, 537 (Pa. 2021) ("[O]ur statement of the law in *Muniz* was incomplete.").

identifie[d] the purpose of [the statute] as 'to combat "the danger of recidivism posed by *sex offenders,* especially those *sexually violent* offenders who commit predatory acts characterized by repetitive and compulsive behavior," and to assist the criminal just system "to identify, investigate, apprehend and prosecute *sex offenders*."'") (quoting report and recommendation quoting 1995 N.Y. Sess. Laws ch. 192, § 1). In this case, in contrast, the Court is without an express legislative statement of intent and is therefore guided by the somewhat broader interpretations of the statute's purpose as interpreted by Wisconsin courts. *See supra* note 5.

The Court is more compelled by *Reine*'s dissent: "[O]ut of a due regard . . . for the prerogatives of the Ohio General Assembly, I believe we should respect the legislative determination that the kidnapping of a child by an adult carries with it such a high risk of sexual assault against the child that it justifies classifying the perpetrator a sexual offender . . . ." 2003 WL 77174, at *5 (Young, J., dissenting).

In light of recognized findings indicating that many non-family child abduction cases involve sexual assault and that child sex assault is a notoriously underreported crime, it was rational for the Wisconsin legislature, in promulgating Wis. Stat. § 301.45(1d)(b), to conclude that non-parent offenders who abduct or falsely imprison children should be subject to sex offender reporting and registry requirements. The Wisconsin legislature "could have found that sexual assault occurs in many cases where there is no direct evidence of it—in cases where the victim is killed, or remains missing, or is unable or unwilling to recount his or her ordeal," *Knox*, 875 N.Y.S.2d at 833, and that "child abductions are often precursors to sexual offenses" such that those convicted of the former may present a higher risk of committing the latter compared to members of the general

public. *Smith*, 780 N.W.2d, ¶ 30 (citing *People v. Johnson*, 870 N.E.2d 415, 426 (Ill. 2007)); *see also* ECF No. 13 at 4 ("[T]he Legislature clearly intended the statute to apply to individuals who committed offenses that posed an intolerable risk of sexual abuse to children."). Whether that inference is ultimately correct is immaterial on rational basis review—what matters is that it is a rational one to draw. Finding that it is rational, the Court cannot conclude that the application of Wis. Stat. § 301.45(1d)(b) to Plaintiffs violates their substantive due process rights. Accordingly, the Court will grant the motion to dismiss to the extent it seeks dismissal of Plaintiffs' substantive due process claim.

### 3.2 Procedural Due Process

Plaintiffs' procedural due process claim fares no better. The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "An essential component of a procedural due process claim is a protected property or liberty interest." *Minch v. City of Chicago*, 486 F.3d 294, 302 (7th Cir. 2007) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) and *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77 (1972)). "If the plaintiffs can establish such a loss, then we must determine what process was due regarding that loss." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007) (citing *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996)).

The Supreme Court in *Connecticut Department of Public Safety v. Doe*—the principal case on which Defendant relies—addressed a procedural due process challenge to "the public disclosure of Connecticut's sex offender registry." 538 U.S. 1, 4 (2003). The Court of Appeals for the Second Circuit concluded that "such disclosure . . . violated the Due Process Clause

because officials did not afford registrants a predeprivation hearing to determine whether they are likely to be 'currently dangerous.'" *Id.* (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 44, 46 (2d Cir. 2001)). The Supreme Court reversed, noting that "Connecticut . . . ha[d] decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness," and that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id*. "[T]he fact that respondent seeks to prove—that he is not currently dangerous—is of no consequence under Connecticut's [statutory scheme]." *Id*. at 7. "[T]he law's requirements turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." *Id*. (citing *Doe*, 271 F.3d at 44).

The same can be said here. Plaintiffs contend that their being labeled as sex offenders "infring[es] on [their] liberty interests without providing them any opportunity to challenge that designation in an adversarial proceeding." ECF No. 1 at 9. But as was the case in *Connecticut Department of Public Safety*, the state's labeling of Plaintiffs as sex offenders "turn[s] on [their] conviction alone," irrespective of whether their offenses involved sexual misconduct or were sexually motivated. 538 U.S. at 7. Plaintiffs expressly concede this themselves. *See* ECF No. 11 at 9 ("[T]here was no sexual component to the offenses that triggered the Plaintiffs' inclusion on the sex offender registry, but under the Statute that doesn't matter.").

The Supreme Court has clearly expressed that "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Conn. Dep't of Pub. Safety*, 538 U.S. at 8. The facts that Plaintiffs

Page 14 of 16
Case 2:23-cv-00517-JPS   Filed 09/20/23   Page 14 of 16   Document 14

wish to establish here—that their offenses involved no sexual misconduct and were not sexually motivated—are not relevant to their categorization as sex offenders under Wisconsin law. *See Halcsik*, 2022 U.S. Dist. LEXIS 52927 at *40 ("[T]he fact the plaintiff asserts—that his offenses of conviction were not sexually motivated and had no sexual component—is of 'no consequence' under the Wisconsin sex offender registry statute.") (quoting *Conn. Dep't of Pub. Safety*, 538 U.S. at 7). Their procedural due process claim therefore fails as a matter of law.

### 4. CONCLUSION

For the reasons provided herein, the Court will grant Defendant's motion to dismiss in its entirety. The Court also concludes that granting Plaintiffs leave to amend would be futile because the defects in Plaintiffs' claims identified herein cannot be remedied by amendment. *See Sound of Music Co. v. 3M*, 477 F.3d 910, 923 (7th Cir. 2007) ("If the amended claim would not survive a motion for summary judgment, the amendment is futile.") (citing *Bethany Pharmacal Co. v. WVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001)).

Accordingly,

**IT IS ORDERED** that Defendant Grace E. Knutson's motion to dismiss, ECF No. 8, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of September, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge